

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
10/09/2012

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 10-36556 |
| DUKE INVESTMENTS, LTD. | § | CHAPTER 11 |
| | § | |
| Debtor(s). | § | DAVID R. JONES |

**MEMORANDUM OPINION**
**(Docket No. 274)**

      Adams and Reese, LLP ("Adams") filed its Third Interim Application for Compensation as debtor's counsel seeking the interim award of compensation in the amount of $81,566.93 and authorization to apply cash deposits in its possession totaling $66,309.62 toward any award. Amegy Bank, N.A. ("Amegy") filed a limited objection to the application to the extent that its cash collateral is used to pay any awarded compensation. For the reasons set forth below, the Court approves the Adams application and overrules Amegy's objection. A separate order will issue.

**Procedural Background**

      1.    Duke Investments, LTD. ("Debtor") filed this chapter 11 case on August 2, 2010 [Docket No. 1].

      2.    Prior to the filing of the case Adams, received cash deposits into its trust account totaling $70,224.00 representing proceeds from the sale of oil and gas (the "Production Deposit").

      3.    By Order entered October 4, 2010, the Court authorized the employment of Adams as Debtor's counsel pursuant to 11 U.S.C. § 327(a) [Docket No. 38]. The Court's Order specifically provides that "the amount of $70,224.40 currently on deposit in the trust account of Adams and Reese, which Amegy Bank claims constitutes its cash collateral, shall be held by Adams and Reese and not used for any purpose subject to further order of the Court."

      4.    On November 12, 2010, the Court approved an agreed order regarding the Debtor's use of cash collateral [Docket No. 64]. The Agreed Order provides that "[t]here shall be no charges against the Bank of the collateral under 11 U.S.C. § 506(c) or otherwise for any expenses incurred in connection with the Collateral during the period Debtor has authority to use the Amegy Cash Collateral." In turn, the parties agreed that Amegy's cash collateral could be used for general purposes either by agreement or further court order.

      5.    On December 9, 2011, the Court approved a settlement between the Debtor and Amegy (the "Amegy Settlement") [Docket Nos. 204 and 206]. Under the Amegy Settlement, Amegy received an allowed secured claim in the amount of $4,000,000. The Amegy Settlement

also defined the extent of Amegy's collateral and provided for the continuation of periodic payments to Amegy [Docket No. 199, Exhibit 1]. The Debtor is currently in default of the Amegy Settlement due to its failure to pay timely the balance of the allowed claim.

6.     By agreement of the parties, this Court previously authorized disbursements from the Production Deposit totaling $8,435.38 for the payment of the Debtor's accounting fees [Docket Nos. 151 and 184]. The remaining balance of the Production Deposit is $61,789.02.[1]

7.     On August 21, 2012, Adams filed its Third Interim Application for Compensation as Counsel for the Debtor, Duke Investments, Ltd, for the Time Period of December 1, 2011 Through July 31, 2012 and Authority to Apply Funds Held in Trust (the "Application") [Docket No. 274]. In the Application, Adams seeks approval of fees in the amount of $77,919.50 and reimbursement of expenses in the amount of $3,647.43. Adams also seeks approval to apply the Production Deposit as well as $4,521.00 held in its trust account (that is not subject to Amegy's lien) toward any awarded compensation. On September 11, 2012, Amegy filed its "limited" objection to the Application [Docket No. 277]. Specifically, Amegy objects to the use of the Production Deposit to satisfy any award in favor of Adams.

8.     The Court held a hearing to consider the Application on September 21, 2012. Robin Cheatham, the attorney primarily responsible for Adams' representation of the Debtor in this case, testified in support of the Application. Amegy cross-examined Mr. Cheatham but called no witnesses of its own in support of the objection.

## **Analysis**

9.     The Court has jurisdiction over this contested matter pursuant to 11 U.S.C. § 1334. Consideration of the Application is a core proceeding under 28 U.S.C. 157(b)(2)(A), (B), (M) and (O). The Court has constitutional authority to enter a final order in this matter.

10.     Although no party has objected to the amount of the compensation requested in the Application, the Court believes that it has an independent duty to examine the Application under the criteria set forth in *In re First Colonial Corp.*, 544 F.2d 1291 (5th Cir. 1977). Having done so, the Court concludes that the Application satisfies the standards enunciated by the Fifth Circuit in *First Colonial*. Such a summary conclusion does not, however, serve to provide appropriate guidance to attorneys practicing within this district.

11.     Two of the factors set forth in *First Colonial* are (i) "the skill required to provide the legal services;" and (ii) "the experience, reputation and ability of the attorney." The Court believes that its analysis of these two factors deserves further comment. The Court notes that, all too often, lofty ideals such as "honesty," "integrity" and "professionalism" are mentioned only when it serves to further one's self–interest. To the contrary, the Court finds that Mr. Cheatham embraces these concepts as the foundational underpinnings of his character. The exhibition of

---

[1]     The Adams application states that the balance of the Production Deposit is $61,788.62. The Court has calculated the balance based on the amount set forth in Judge Bohm's original order. No explanation is provided regarding the $0.40 discrepancy.

these traits is most apparent when a lawyer is called upon to represent a difficult client in a difficult case.

12. The undersigned inherited this case upon taking office in late 2011. The Court quickly determined that Mr. Cheatham places the truth above all else and that a direct answer in response to a question from the Court could always be expected. Practitioners, young and old, would do well to follow Mr. Cheatham's example. The Court appreciates the candor and directness.

13. Amegy objects to Adams' request to apply the Production Deposit because "[t]here is no showing that the interests of Amegy are adequately protected or that AR [Adams] or the Debtor have meet the standards required for the Court to authorize the use of Amegy Collateral to pay the compensation of counsel for the Debtor." The Court disagrees.

14. Amegy goes to great lengths to point out that the Debtor has failed to pay its claim in accordance with the Amegy Settlement and that this case has been extremely difficult due, in part, to the Debtor's principal. Yet, when questioned by the Court as to why no action had been taken after the Debtor's payment default, Amegy responded that it was still attempting to find an acceptable resolution that would result in satisfaction of its claim. That exploration necessarily requires the involvement of the Debtor's professionals. Amegy tacitly acknowledges that the ongoing involvement of skilled counsel on the Debtor's behalf provides Amegy with a benefit that is greater than the perceived benefit of seeking to enforce its lien rights. In this case, the Court finds that having competent Debtor's counsel at the helm provides a significant benefit to Amegy and that Amegy is adequately protected by having an open channel of communication as well as an avenue to obtain accurate information about the case and its collateral. This conclusion is further supported by the parties' agreement with respect to cash collateral. Amegy obtained a waiver of the Debtor's rights under 11 U.S.C. § 506(c) in exchange for the Debtor's liberal use of cash collateral. Partial payment of Adams' fees furthers the policies underlying the Bankruptcy Code and the parties' agreement. Amegy's objection is overruled.

15. Accordingly, the Application is approved. Adams is awarded interim compensation in the amount of $81,566.93, representing fees in the amount of $77,919.50 and reimbursement of expenses in the amount of $3,647.43. Adams is authorized to apply the Production Deposit as well as $4,521.00 held in its trust account toward the awarded compensation. A separate order consistent with the foregoing will issue.

**SIGNED: October 9, 2012.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**